UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TRISTA LEMER, individually, and as next friend of her minor children, J.B.L. and J.D.L.;<br><br>Plaintiffs,<br><br>vs.<br><br>PROGRESSIVE NORTHERN INSURANCE COMPANY,<br><br>Defendant. | 4:25-CV-04209-ECS<br><br>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |

Following a car collision, Trista Lemer and two of her children, J.B.L. and J.D.L., (collectively "Plaintiffs") made a demand for uninsured motorist benefits from their insurer, Defendant Progressive Northern Insurance Company. The parties attempted to negotiate compensation, but they did not agree as to the amount of damages. Plaintiffs now sue Progressive for breach of contract pursuant to 28 U.S.C. § 1332. Doc. 1. Progressive moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 7. Defendant requested oral argument, id., and the Court heard oral argument on September 22, 2026, Doc. 21. For the reasons explained below, the Court grants in part and denies in part Progressive's Motion to Dismiss.

## I. Factual Background

### A. Standard

In challenging subject-matter jurisdiction, a defendant may make either a facial or factual challenge to jurisdiction. Middlebrooks v. United States, 8 F. Supp. 3d 1169, 1173 (D.S.D.

2014). A facial challenge to jurisdiction only requires "the court to examine the complaint and determine if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction." Id. (citing Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). A factual challenge, on the other hand, occurs when the face of the complaint "is formally sufficient," but the defendant argues that "there is in fact no subject matter jurisdiction." Jackson v. Abendroth & Russell, P.C., 207 F. Supp. 3d 945, 950 (S.D. Iowa 2016) (quoting Apex Dig., Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 444 (7th Cir. 2009)).

Here, this Court reads Defendant's motion to raise a factual attack to subject matter jurisdiction, arguing that when considering external evidence, Plaintiffs' lack of medical treatment and lack of permanent injuries prohibit Plaintiffs from exceeding the amount in controversy required for diversity jurisdiction. Doc. 8 at 9. When a challenge to jurisdiction is based on a factual attack, "the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. Thus, the nonmoving party would not enjoy the benefit of the allegations in its pleadings being accepted as true by the reviewing court." Branson Label, Inc. v. City of Branson, 793 F.3d 910, 914–15 (8th Cir. 2015) (citations omitted). "Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue." Osborn, 918 F.2d at 730 (quoting Crawford v. United States, 796 F.2d 924, 928 (7th Cir. 1986)).

But Progressive also moves for dismissal under Federal Rule of Civil Procedure 12(b)(6). Doc. 7 at 1. "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). On a motion to dismiss under Rule 12(b)(6), "[c]ourts must accept a plaintiff's factual allegations as true" and construe all reasonable inferences in the plaintiff's favor "but need not accept a plaintiff's legal conclusions." Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012) (citing Ashcroft, 556 U.S. at 678; E-Shops Corp. v. U.S. Bank Nat'l Ass'n, 678 F.3d 659, 662 (8th Cir. 2012)).

Accordingly, when ruling on Progressive's factual challenges to subject matter jurisdiction, this Court considers matters outside the pleadings that the parties submitted. When ruling on Progressive's motion to dismiss based on Rule 12(b)(6) or any facial challenges to subject matter jurisdiction, this Court limits itself to the factual allegations contained in the Complaint and accepts such facts as true.

**B. Facts**

On November 26, 2024, after failing to yield at an intersection, an uninsured driver caused a collision with a car containing Trista, J.B.L., and J.D.L. Doc. 1 ¶¶ 7–10; Doc. 18-1. The uninsured motorist pled guilty to failure to yield, and Trista did not receive a citation. Doc. 1 ¶¶ 11–12; Doc. 18-1. Following the collision, J.D.L. received medical treatment for abdominal pain, and a chest x-ray was ordered. Doc. 1 ¶ 13; Doc. 9-3 at 211–12, 214, 221–22, 246. J.D.L.'s medical bills totaled $3,309.62. Doc. 8 at 8–9; Doc. 9-4 at 2–3; Doc. 17 at 3, 11; Doc. 19 at 3. The parties dispute whether J.B.L. and Trista suffered any injury from the accident. Plaintiffs allege that J.B.L. smashed his face against a surface in the vehicle, which worsened an indentation in his head. Doc. 17 at 3. But Defendant alleges that J.B.L. did not receive any

treatment related to the collision and that the indentation was preexisting at the time of the collision. Doc. 8 at 2–3. Trista alleges she suffered bruises and injury, but the parties dispute whether Trista sustained any injury. Id. at 2; Doc. 17 at 4; Doc. 19 at 1.

Progressive insured the car Trista was driving; the insurance policy provides uninsured motorist coverage with limits of up to $100,000 per person and $300,000 per accident. Doc. 1 ¶¶ 5–6. Plaintiffs made a demand for $100,000 for each J.B.L. and J.D.L. and $50,000 for Trista, but they lowered their demand during negotiations. Id. ¶ 15; Doc. 8 at 2; Doc. 9-1; Doc. 9-2. Progressive had already paid $2,000 toward medical treatment of each J.D.L. and J.B.L. based on Plaintiffs' representation of injuries. Doc. 17 at 3–4; Doc. 18-2; Doc. 18-3. In response, Progressive offered significantly lower amounts and reduced the damages of J.D.L.'s claim based on Medicaid adjustments. Doc. 1 ¶ 17; Doc. 9-2; Doc. 17 at 10. But once Plaintiffs' counsel informed Progressive that South Dakota law did not permit adjustments for Medicaid payments, Progressive backed off that position. Doc. 17 at 10; Doc. 19 at 7. The parties have not reached an agreement as to the value of Plaintiffs' claims.[1] See generally Docs. 1, 8, 17, 19.

## II. Motion to Dismiss

### A. Amount in Controversy

#### 1. Legal Standard

District courts have original jurisdiction of civil actions arising under state law when there is complete diversity with all plaintiffs residing in different states than all defendants and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; see also OnePoint Sols., LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007) (citation omitted). Progressive's challenge to

[1] Plaintiffs were in a separate car collision in 2025, and Defendant alleges that Plaintiffs did not inform the insurer of the 2024 car collision. Doc. 8 at 5 (citing Doc. 9-7). Defendant alleges that Plaintiffs' counsel represented in the demand for the 2025 collision that Plaintiffs were experiencing no issues prior to July 2025. Id. (citing Doc. 9-7).

subject matter jurisdiction argues that Plaintiffs have not met the amount in controversy requirement. Doc. 8 at 6–9. Because Plaintiffs seek to invoke jurisdiction in federal court, and Defendant challenges that the amount in controversy is legitimate, the burden falls on Plaintiffs to demonstrate that the amount in controversy exceeds $75,000 by a preponderance of the evidence. OnePoint Solutions, LLC, 486 F.3d at 347 (citation omitted). Plaintiffs note, "where the plaintiff is the proponent of diversity jurisdiction, the amount in controversy controls unless the defendant can establish to a legal certainty that the claim is for less than the jurisdictional minimum." Doc. 17 at 6 (quoting Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009)).

The Eighth Circuit has noted:

> There is no one single solution to the question here presented. The scope of the pre-trial jurisdictional inquiry must of necessity turn upon the specific pleadings and facts involved in each particular case. Yet in resolving the question of the appropriateness of jurisdiction as measured by the legal certainty of plaintiff's claim, all doubts should be resolved by the district court in favor of allowing a plenary trial rather than a peremptory "trial" under the guise of an evidentiary jurisdictional hearing.

Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969). Indeed, if "access to federal district courts is to be further limited it should be done by statute and not by court decisions that permit a district court judge to prejudge the monetary value of an unliquidated claim." Id. (quoting Deutsch v. Hewes Street Realty Corp., 359 F.2d 96, 100 (2nd Cir. 1966)).

"Generally, a complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." Larkin v. Brown, 41 F.3d 387, 388 (8th Cir. 1994) (citation modified). "Even if it is highly improbable that the Plaintiffs will recover the amounts Defendants have put into controversy, this does not meet the legally impossible

standard." Raskas v. Johnson & Johnson, 719 F.3d 884, 888 (8th Cir. 2013) (citing Keeling v. Esurance Ins. Co., 660 F.3d 273, 275 (7th Cir. 2011)).

The issue to be decided is "not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are: In other words, an amount that a plaintiff claims is not 'in controversy' if no fact finder could legally award it." Kopp v. Kopp, 280 F.3d 883, 885 (8th Cir. 2002). Accordingly, the question before the Court "is not what the plaintiff will recover, but whether there is a legally cognizable basis that recovery could exceed $75,000." Rosener v. Menard, Inc., 571 F. Supp. 3d 1116, 1119 (D. Neb. 2021) (citation omitted).

**2. J.D.L.'s Claims**

It is undisputed that J.D.L. sought treatment at the emergency room for abdominal pain and chest tenderness following the accident. The parties also do not dispute that J.D.L.'s medical expenses totaled $3,309.62 to date for her medical treatment because of the accident. Based on this evidence in the record, which is undisputed, the question before the Court is whether it is legally impossible for a jury to find in J.D.L.'s favor for an amount greater than $75,000. Again, even if it is highly improbable, that is not the standard the Court must use when deciding jurisdiction. The precise question the Court must decide is whether it is legally impossible. The Court finds it is not. There are no common law or statutory bars to a jury awarding more than $75,000 to J.D.L. Indeed, J.D.L. has alleged pain and suffering.[2]

---

[2] Progressive argues that because Plaintiffs' settlement negotiation decreased below $75,000 that the amount in controversy cannot be met. Doc. 8 at 8. In an unpublished Eighth Circuit opinion, the court cited favorably to a Seventh Circuit opinion to support that "although settlement negotiations are not admissible at trial to prove liability for claim and its amount, they can be considered to determine amount in controversy for diversity jurisdiction." Mastin v. Navistar, Inc., No. 21-1947, 2022 WL 130006, at *1 (8th Cir. Jan. 14, 2022) (per curiam) (citing Grinnell Mut. Reinsurance Co. v. Haight, 697 F.3d 582, 585 (7th Cir. 2012)). But this Court does not find that settlement negotiations for J.D.L.'s claims that started at an amount substantially exceeding $75,000 and eventually reached an amount less than $75,000, see Doc. 9-2, evidence that the claim is worth less than $75,000.01 to a legal certainty or that no reasonable fact finder could award damages exceeding $75,000.

Plaintiffs argue that many courts have held that a plaintiff had sufficiently alleged an amount in controversy exceeding $75,000 based on noneconomic damages even when the plaintiff presented a relatively low amount of medical damages. Doc. 17 at 8–11. In Kopp, the Eighth Circuit held that plaintiff had exceeded the amount in controversy requirement despite plaintiff's "medical bills fall[ing] well below the requisite amount" because noneconomic and punitive damages were available. 280 F.3d at 884–86. In Peterson v. Travelers Indemnity Co., the Eighth Circuit found that the court had jurisdiction over an insurance dispute where the plaintiff sought only $5,000 in medical damages because when considering noneconomic damages, including attorney's fees under SDCL § 58-12-3, "it is not legally impossible that she could recover at least that amount." 867 F.3d 992, 995–96 (8th Cir. 2017). Attorney's fees under SDCL § 58-12-3 are available when an insurance company's refusal to pay uninsured motorist coverage is "vexatious or without reasonable cause" without a finding of bad faith. Tripp v. W. Nat. Mut. Ins. Co., 664 F.3d 1200, 1202 (8th Cir. 2011).[3] This Court cannot determine at this stage that there is a reasonable certainty that J.D.L.'s claims are for less than $75,000.01 or that no reasonable jury could award damages exceeding $75,000 on J.D.L.'s claims. Such a result is not legally impossible.

### 3. J.B.L. and Trista's Claims

The situation is different for J.B.L. and Trista. Plaintiffs have offered no proof regarding the claimed injuries of J.B.L. and Trista. No medical records document any injuries they allegedly sustained in the subject accident. To the contrary, the only medical record referencing J.B.L. and Trista from the day of the accident is from J.D.L.'s treatment, which states "[e]ven though mom and the little brother were involved in the vehicle accident, the patient is the only 1

[3] By citing SDCL § 58-12-3, the Court is not agreeing with Plaintiffs at this early stage that attorney's fees are appropriate in this case. The Court is merely citing the legal standard for when attorney's fees can be awarded.

being seen today because she has ongoing symptoms." Doc. 9-3 at 222. Further, no declarations have been filed by Plaintiffs attesting to the injuries Trista is alleging due to the subject accident, either for herself or her minor child J.B.L. While Plaintiffs have submitted medical records for treatment sought by J.B.L. months after the accident, the record cited does not reference the accident at all, and it is clear to the Court that the "indentation" on J.D.L.'s head existed roughly two years before the subject accident. See generally Doc. 9-5. Instead of offering proof by way of a declaration or through medical records, Plaintiffs cite a letter from legal counsel to Defendant prior to the suit being initiated where Trista and J.B.L. allege injuries. But statements by legal counsel are not evidence.

The parties dispute whether J.B.L. and Trista suffered any injury because of the accident. Doc. 8 at 2–3, 8–9; Doc. 17 at 3–4, 10–11. Pursuant to the parties' insurance policy, the insurer's obligation to pay for uninsured motorist coverages arises from "bodily injury." Doc. 9-9 at 13. Accordingly, whether J.B.L. and Trista suffered injury is bound up with the merits of the case. One court has held that if evidence in a factual attack is bound up with the merits, the court may: "(1) consider evidence outside the pleadings, such as affidavits or other documents; (2) hold an evidentiary hearing; (3) evaluate the evidence under the summary-judgment standard; or even (4) proceed to a full trial." Perficient, Inc. v. Crushbank Tech., Inc., No. 4:24-cv-00717-SRC, 2024 WL 3924597, at *2 (E.D. Mo. Aug. 23, 2024). The Eighth Circuit once concluded that a "jurisdictional inquiry [was] 'so bound up' with the merits of the case as to require further factual development of this threshold jurisdictional question." Buckler v. United States, 919 F.3d 1038, 1054 (8th Cir. 2019) (quoting Osborn, 918 F.2d at 730). Here, instead of deciding whether J.B.L. and Trista suffered any injury in the collision, the Court delays determining the jurisdictional issue until there has been further discovery and factual development.

Further, Plaintiffs argue that the amount in controversy for each claim does not need to exceed $75,000. Doc. 17 at 8. Instead, Plaintiffs argue that only one claim needs to exceed $75,000 for the Court to have supplemental jurisdiction over all other claims. Id. at 7. The Supreme Court in Exxon Mobil Corp. v. Allapattah Services, Inc., held that "a diversity case in which the claims of some plaintiffs satisfy the amount-in-controversy requirement, but the claims of other plaintiffs do not, presents a civil action of which the district courts have original jurisdiction" and that 28 U.S.C. "§ 1367(a) confers supplemental jurisdiction over all claims, including those that do not independently satisfy the amount-in-controversy requirement, if the claims are part of the same Article III case or controversy." 545 U.S. 546, 558–59 (2005) (citation modified). "Claims within the action are part of the same case or controversy if they derive from a common nucleus of operative fact." Myers v. Richland Cnty., 429 F.3d 740, 746 (8th Cir. 2005) (citation modified). "A plaintiff's claims derive from a common nucleus of operative fact if the claims are such that he would ordinarily be expected to try them all in one judicial proceeding." Farmers Union Serv. Ass'n v. Murphy, No. 4:25-CV-04079-RAL, 2025 WL 3204641, at *5 (D.S.D. Nov. 17, 2025) (quoting OnePoint Sols., LLC, 486 F.3d at 350). Accordingly, even if J.B.L. and Trista's claims did not on their own meet the jurisdictional threshold, these claims arise out of the same case or controversy of J.D.L.'s claims such that this Court would have supplemental jurisdiction pursuant to § 1367. Therefore, this Court is satisfied at this stage of the litigation that the amount in controversy requirement does not preclude it from hearing J.D.L., J.B.L., and Trista's claims.

**B. Ripeness of Breach of Contract Claims**

Defendant moves to dismiss Plaintiffs' breach of contract claims because they are not ripe and fail to state a claim. Doc. 8 at 9. Pursuant to the contract, Progressive agreed to "pay

for damages that an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle." Doc. 9-9 at 13 (citation modified). In Baker v. Continental Western Insurance Co., the District of South Dakota interpreted "'legally entitled to recover' [to] mean simply that an insured must be able to establish fault on the part of the uninsured motorist which gives rise to damages, and to prove the extent of those damages." 748 F. Supp. 716, 722 (D.S.D. 1990) (citations omitted). Progressive argues that because the "extent of damages" is unresolved and has not been established, it does not have an obligation to make payments, and thus, "as a matter of law, the mere failure to issue payment in the amount demanded by Plaintiffs is not a basis for a breach of contract." Doc. 8 at 10. Progressive also argues that "because the obligations and liabilities of the parties are in dispute, the proper recourse is to pursue a claim for declaratory relief that requests a trial on damages in a court with jurisdiction." Id. at 11.

Both parties agree that Plaintiffs do not have an obligation to reduce a claim against the uninsured motorist who hit the Plaintiffs to judgment in a prior proceeding in order to establish damages. Doc. 17 at 13; Doc. 19 at 9–10. Progressive argues, however, that Plaintiffs can pursue a direct action against Progressive but "Plaintiffs' damages have not been proven and remain undetermined. Therefore, if Plaintiffs want to pursue a direct action against Progressive, then the proper procedure is to pursue a claim for declaratory relief that requests a trial on their personal injury damages in a court with jurisdiction." Doc. 19 at 10 (citing Doc. 8 at 9–14).

In Baker, the court noted that "[a]n action by an insured against an insurance carrier pursuant to an uninsured motorist provision is an action on the policy and is therefore *ex contractu.*" 748 F. Supp. at 719 (citing Helmbolt v. LeMars Mut. Ins. Co., 404 N.W.2d 55, 57 (S.D. 1987)). The court further instructed that "[n]umerous jurisdictions have adopted the view that an action by an insured against an insurance carrier arising out of an uninsured motorist

provision of an insurance policy is one which sounds in contract and is therefore governed by the principles of law applicable to suits for breach of contract." Id. at n.4 (citations omitted). With these principles in mind, the court in Baker instructed that a plaintiff has three ways to pursue an uninsured motorist claim: (1) "an action directly against his uninsured motorist liability carrier without joining the uninsured motorist as a party defendant," (2) "an action joining both the insurer and the uninsured motorist as party defendants," or (3) "an action against the uninsured motorist alone without joining the insurer as a party defendant." Id. at 722 (quoting Winner v. Ratzlaff, 505 P.2d 606, 611 (Kan. 1973)); see also Goddard v. City of Deadwood, No. CIV. 09–5069, 2011 WL 4549171, at *2 n.2 (D.S.D. June 3, 2011); LeBeau v. Progressive N. Ins. Co., No. CIV. 12–5044–JLV, 2015 WL 5697364, at *12 (D.S.D. Sept. 28, 2015) (granting partial summary judgment on plaintiff's bad faith and punitive damages claims, but reserving for the jury's consideration the remaining breach of contract claim for uninsured motorist benefits).

It appears clear to this Court that since Judge Battey's decision in Baker, breach of contract principles have governed direct actions against insurance carriers for uninsured motorist benefits in the District of South Dakota. Indeed, Progressive does not cite a South Dakota case in which a district court dismissed a breach of contract claim for uninsured motorist benefits and further ruled that a plaintiff must first proceed with a declaratory judgment action. Progressive concedes that no such authority exists. Regardless, Progressive asks this Court to adopt the law of Texas where apparently a separate declaratory judgment must be pursued first to determine the amount a plaintiff is legally entitled to recover because a breach would not arise until the insurer failed to pay that amount. Doc. 8 at 12–14 (citing Ibarra v. Allstate Fire & Cas. Ins. Co., No. SA:20-CV-00280-JKP, 2020 WL 3259806 (W.D. Tex. June 16, 2020)); Doc. 19 at 11–13.

This Court is not persuaded that it should overhaul South Dakota's precedent for pursuing an uninsured motorist claim in court. In this Court's view, such a change is not needed. In the context of a trial where breach of contract is alleged for a claim of uninsured motorist benefits, a jury can fairly decide the amount of damages a plaintiff suffered if proper jury instructions are given. This Court is not aware of—and the parties do not cite to—any South Dakota case law suggesting that the only course of action is to proceed with a declaratory judgment action before suing for breach of contract. Accordingly, this Court finds that dismissing Plaintiffs' breach of contract claims as not ripe is improper. Progressive's Motion to Dismiss on this ground is denied.

### C. Declaratory Judgment Claims

Plaintiffs' Complaint asks for "a declaratory judgment requiring Defendant to remit the $300,000 in UM benefits available under the Policy to Plaintiffs." Doc. 1 ¶ 30. Defendant moves to dismiss Plaintiffs' claims for declaratory judgment because the Complaint does not seek declaratory relief. Doc. 8 at 15–17. Defendant argues that the Complaint does not request a declaration of rights and instead demands coercive relief. Id. at 16. Plaintiffs argue that the District of South Dakota has rejected Defendant's argument. Doc. 17 at 16–20 (citing Kotelman v. Farm Bureau Fin. Servs., No. 4:24-CV-04066-RAL, 2025 WL 3089731 (D.S.D. Nov. 5, 2025); Dziadek v. Charter Oak Fire Ins. Co., No. 4:11-CV-04134-RAL, 2015 WL 7760193 (D.S.D. Dec. 1, 2015)).

Plaintiffs argue that "[t]his precise argument was raised before in Kotelman at the summary judgment stage, and it was unsuccessful." Doc. 17 at 17. But, as Defendant correctly notes, Doc. 19 at 20, the Opinion and Order in Kotelman does not address this issue, 2025 WL 3089731, at *1–7. Accordingly, this Court does not find Kotelman persuasive.

Plaintiffs also allege that the District of South Dakota has rejected this theory in Dziadek, 2015 WL 7760193, at *4. Doc. 17 at 19. In Dziadek, the plaintiff sought declaratory relief "that she is an insured under the underinsured ('UIM') endorsement with [defendant] owing her a duty of good faith and fair dealing, that $1,000,000 of UIM coverage exists, and that she is an insured under the medical payments endorsement." 2015 WL 7760193, at *1. After paying the policy limits, the defendant moved for summary judgment arguing that the claims for declaratory relief were moot. Id. The court determined that because the insurer admitted coverage and paid the plaintiff, there was little live controversy on the claims for declaratory relief; even so, the court determined that the claims for declaratory relief were not moot because they had a nexus to other claims by plaintiff and "declaratory judgment counts can be utilized as 'predicates to further relief.'" Id. at *4 (quoting Powell v. McCormack, 395 U.S. 486, 499 (1969)). Because the plaintiff in Dziadek requested a declaration of rights, and Defendant has not argued that Plaintiffs' claims are moot or duplicative, this Court does not find Dziadek persuasive. Doc. 19 at 20–21.

"A declaratory judgment is itself a remedy, not a cause of action." Sprint Commc'ns Co. L.P. v. Crow Creek Sioux Tribal Ct., No. 4:10-CV-04110-KES, 2015 WL 12670415, at *5 (D.S.D. June 2, 2015) (citations omitted). Under the Declaratory Judgment Act, a court with jurisdiction "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Under 28 U.S.C. § 2202, "[f]urther necessary or proper relief based on a declaratory judgment or decree

may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."[4]

Accordingly, before this Court can award the "[f]urther necessary or proper relief" requested, this Court must declare the parties' rights. Royal Indem. Co. v. Apex Oil Co., 511 F.3d 788, 793 (8th Cir. 2008) (citing 28 U.S.C. § 2202). Plaintiffs allege that "[a]t this extremely early stage in the case, it is impossible to know whether the eventual outcome of the claim will be and what the contours of a potential declaratory judgment may be." Doc. 17 at 17. Although the Court may be able to order Defendant to remit damages upon motion under 28 U.S.C. § 2202, this Court finds that, in this narrow instance, Plaintiffs have not requested proper declaratory relief of a declaration of rights. Instead, Plaintiffs have simply asked for all the money available under the subject policy. Because Plaintiffs' do not ask this Court for a declaration of their rights, dismissal of Count II is appropriate. This Court believes the most appropriate action in this limited circumstance is to dismiss Plaintiffs' claims for declaratory relief without prejudice. The interests of justice favor permitting Plaintiffs to file an amended complaint seeking proper declaratory relief; thus, Plaintiffs have thirty days to file an amended complaint.[5] Because Plaintiffs may file an amended complaint, Defendant shall file its answer within 14 days after the filing of the amended complaint or, if no amended complaint is filed within the time prescribed, within 14 days after Plaintiffs' deadline to file an amended complaint expires. See Fed. R. Civ. P. 12(a)(4).

---

[4] Plaintiffs argue that declaratory relief is not precluded by the existence of another remedy. Doc. 17 at 16. But this Court does not find Defendant to be arguing that Plaintiffs' declaratory judgment claims should be dismissed for that reason. See Doc. 8 at 15–17; Doc. 19 at 18–21.

[5] If Plaintiffs choose to file an amended complaint, it must comply with Federal Rule of Civil Procedure 15 and D.S.D. Civ. LR. 15.1.

## III. Conclusion

Accordingly, it is

ORDERED that Progressive's Motion to Dismiss, Doc. 7, is granted in part and denied in part as consistent with this Opinion and Order. It is further

ORDERED that Plaintiffs may file an amended complaint within thirty days of this Court's Opinion and Order. It is finally

ORDERED that Defendant shall file its answer within 14 days after the filing of the amended complaint or, if no amended complaint is filed within the time prescribed, within 14 days after Plaintiffs' deadline to file an amended complaint expires, whichever occurs first.

DATED this 30th day of September, 2026.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE